APPLEGATE *v.* STATE BOARD OF DENTISTRY.

1. EVIDENCE—CRIMINAL LAW—LICENSES—PRACTICE OF DENTISTRY.

   The testimony in a criminal case against person who was convicted of illegal practice of dentistry may not be considered by State board of dentistry in its proceeding to suspend license to practice dentistry of person in whose office the defendant in the criminal case had been permitted to practice, as the licensee was not a party to the criminal case and had no opportunity to examine or cross-examine witnesses in that trial (CL 1948, §§ 338.201–338.221).

2. LICENSES — REVOCATION — SUSPENSION — PROCEEDINGS — SPECIFIC CHARGES—EVIDENCE.

   The action of a board or officer in revoking a license must not be arbitrary, must be for cause, only, and based on specific charges made and evidence submitted.

3. SAME—REVOCATION—DISMISSAL OF PROCEEDINGS.

   The statute relating to direction of the verdict for defendant by the court at the conclusion of the plaintiff's case is not, by its wording, made expressly applicable to a proceeding to revoke a license (CL 1948, § 618.56).

4. SAME—REVOCATION—POLICE POWER.

   The action of an administrative or regulatory body in revoking a license to practice a profession is an exercise of the police power and not, in a strict sense, the exercise of judicial power.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 6, 8, 9] 41 Am Jur, Physicians and Surgeons § 53.

[1, 6, 8, 9] Grounds for revocation of valid license of physician, surgeon, or dentist. 54 ALR 1504; 82 ALR 1184.

Admissibility and necessity of expert evidence in proceeding for revocation of license of physician, surgeon, or dentist. 6 ALR2d 675.

[1, 8] 41 Am Jur, Physicians and Surgeons § 60.

[2] 41 Am Jur, Physicians and Surgeons § 58 *et seq.*

[2] Validity of statute providing for revocation of license of physician, surgeon, or dentist. 5 ALR 94; 79 ALR 323.

[4] 10 Am Jur, Certiorari § 12; 33 Am Jur, Licenses § 65.

[5] 41 Am Jur, Physicians and Surgeons § 62.

[7] 10 Am Jur, Certiorari § 3.

5. SAME—REVOCATION—DENTISTRY—FINDINGS OF FACT—SUPREME COURT.

The supported findings of fact made by the State board of dentistry in a proceeding to revoke a license to practice dentistry are conclusive upon the Supreme Court, in the absence of fraud, but the Court has power to review questions of law involved in any final decision or determination of the board (CL 1948, § 338.219).

6. SAME—REVOCATION PROCEEDINGS—DISMISSAL—EVIDENCE.

State board of dentistry's denial of licensee's motion to dismiss proceedings to revoke or suspend his license because of insufficiency of proof to support petition *held*, not error in view of evidence submitted tending to show the licensee knew that an unlicensed person, employed by him as a credit manager, was also practicing dentistry in his office (CL 1948, §§ 338.201–338.221).

7. CERTIORARI—FINDINGS OF FACT—SUPREME COURT—EVIDENCE.

The Supreme Court may not review questions of fact on certiorari except to determine whether there is competent evidence to support the findings made.

8. LICENSES — DENTISTRY — REVOCATION — PETITION — FAMILIARITY WITH FACTS.

Sworn petition of police officer who had charge of case, under prosecuting attorney, against person who was practicing dentistry without a license in plaintiff licensee's office, who had knowledge of the case, supervision of the men who handled it, talked with witness upon whom criminal defendant had practiced and who had been to the court and checked the records *held*, a sufficient petition to make a circumstantial showing as to plaintiff's guilt of charge of permitting an unlicensed dentist to practice in plaintiff's office, since the petitioner made a showing of sufficient familiarity with facts (CL 1948, § 338.-219).

9. SAME—DENTISTRY—SUSPENSION—FINDING OF BOARD—EVIDENCE.

Finding of State board of dentistry that plaintiff licensee was guilty of permitting an unlicensed dentist to practice dentistry in his office upon a named individual which justified suspension of license for 1 year *held*, supported by testimony (CL 1948, §§ 338.201–338.221).

Appeal from State Board of Dentistry. Submitted October 17, 1952. (Docket No. 16, Calendar No. 45,117.) Decided March 10, 1953.

The State Board of Dentistry, after a hearing on the merits, suspended Joseph R. Applegate's license to practice dentistry for a period of 1 year. He reviews by appeal in the nature of certiorari. Affirmed.

*Edward N. Barnard,* for plaintiff.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara* and *Percival R. Piper,* Assistants Attorney General, for defendant board.

REID, J.   Plaintiff, on leave granted, took an appeal in the nature of certiorari from an order of defendant board dated February 13, 1951, suspending plaintiff's dental license for a period of 1 year. Plaintiff claims that the petition against him was not signed by a person familiar with the facts, as required by the dental act (CL 1948, §§ 338.201–338.221 [Stat Ann 1951 Cum Supp §§ 14.629 (1)–14.629 (21)]). Plaintiff further claims that no offense under the statute was proved.

The order appealed from was made in proceedings had before defendant board, based on a petition filed with defendant board by one Latreille, investigator for defendant board. The gravamen of the charge in the petition (dated June 14, 1949) was that appellant (hereinafter referred to as plaintiff) knowingly and willingly allowed Dave Edelsohn, not a licensed dentist, to perform dental operations in the mouth of Francis Michellod, such operations being prohibited by law by anyone who is not a licensed dentist; and that on October 27, 1945, and divers other dates including April 3, 1946, Edelsohn performed dental work such as taking impressions and fitting dentures in the mouth of Francis Michellod.

Edelsohn was arrested for violation of the dental law, convicted and sentenced. On appeal to this Court his conviction was affirmed, January 3, 1949. See *People* v. *Edelsohn,* 323 Mich 469. Many of the facts in that case were also testified to in the instant proceeding against Dr. Applegate.

There was testimony in the instant case before the defendant board that Helen Wallace, step daughter of plaintiff, was receptionist and bookkeeper in the office of plaintiff; that witness Michellod came to the office of plaintiff in 1945 to have some teeth pulled and that he inquired of the receptionist, Mrs. Wallace, for plaintiff. He went to the office again in the spring of 1946, at which time Edelsohn took impressions of the upper and lower jaws and at a later call in the office by Michellod, Edelsohn tried to fit the impressions, cutting back to the gum.

Mrs. Wallace testified that in 1945 and 1946 "we" had a partnership consisting of William Wallace, Helen Wallace and Garrett Applegate (brother of plaintiff), which partnership held a lease on the building in which plaintiff's office is situated and subleased one portion of the building to the optical department and another portion to Dr. Applegate opperating the dental department; that plaintiff as a rule employed 3 dentists who got paid 25% to 30% of all the work they did; that plaintiff would check the records to see what patients were coming to the office and what payments were being made; that the account against Michellod was on the books which were open to plaintiff's inspection.

It also appeared from Edelsohn's testimony that plaintiff was in the office nearly every day, and that no one operated the dental offices but plaintiff, Dr. Applegate.

Edelsohn testified on cross-examination as follows:

"*Q.* You stated a moment ago that Doctor Applegate was in the office practically every day?

"*A.* Practically every day.

"*Q.* What part of the office would he be in when he came in?

"*A.* He had his office. When he came in, he would take these reports, what the laboratory was turning out, what the dentists were turning out, what I collected from these collection accounts—a regular form was given to him every day showing exactly how the thing was running—the amount of money expended for teeth, for gold, different things like that.

"*Q.* Was that on the first floor, or was it a basement office?

"*A.* That was the first floor."

There is nothing in the record to show that the defendant board considered, in arriving at their finding and order, any part of the testimony taken on the trial of Edelsohn, except as certain portions of the testimony on the Edelsohn trial were read by Mr. Barnard, plaintiff's attorney, to Michellod for the purposes of impeachment, and the fact, testified to without objection, that Edelsohn was convicted of illegal practice of dentistry. Defendant board cites *Purdie* v. *Police Trial Board,* 318 Mich 430, as authority for the proposition that the testimony in the criminal case against Edelsohn could be considered by the defendant board as tending to prove in part the case against Applegate, plaintiff here. We cannot so rule, because Applegate was not a party to the criminal case against Edelsohn and had no opportunity to examine or cross-examine witnesses in that trial; whereas, in the *Purdie Case,* Purdie was a party to the criminal case and also a party to the case before the trial board.

The statement of account or bill against Michellod was presented to him in the name of "Doctor Applegate" as the person to whom the bill was owed.

During the cross-examination of Dr. Applegate, the following occurred:

"*Q.* Did anyone in your office advise you that Mr. Michellod had complaints concerning the work performed on him?

"*A.* I answered that at the time that the collections were being made. Then I asked about the case and they said that he was complaining about his work. I said, 'Have them righted [*sic?* right it] if it is wrong. Have the dentist that did the work see him and right it if it is wrong.'"

It is further to be noted that Mrs. Wallace in one place in her testimony testified that she could see all through the office and see if Edelsohn received patients in the office.

Defendant board claims that there is sufficient showing in the record in the instant case that Edelsohn's treatment of Michellod was routine and in accordance with the wishes and directions of plaintiff Applegate. It could be considered that Edelsohn would not practice dentistry in Applegate's office, without Applegate's knowledge and consent. The "bill" for treatment of Michellod was run in Applegate's name, and it could be considered that Edelsohn, knowing that fact, was relying upon Applegate for pay for those services.

Edelsohn testified that he was credit manager for both optical and dental departments. Mrs. Wallace testified that Edelsohn's work was to pass upon credit to be extended and that there was only 1 person in the optical department. Accounts requiring urgent attention for collection purposes seem to have been turned over to a credit bureau. It is not made clear in the testimony just how necessary Edelsohn's full-time employment as credit manager was. Under all the testimony, it could be considered that his real employment was in part at least for the practice of dentistry.

It was for the defendant board to determine the underlying facts, and to say whether the actions of Edelsohn are to be considered as speaking with more convincing effect than the testimony of Edelsohn and of plaintiff Applegate.

Defendant board in their brief appropriately quote as a fair principle of law governing a proceeding for revocation of a license, 17 RCL, p 555:

"In general the action of a board or officer in revoking a license must not be arbitrary. It must be for cause, only, and based on specific charges made and evidence submitted."

This agrees in general with many citations by plaintiff much to the same effect.

Plaintiff claims that the defendant board should have dismissed the proceedings upon the conclusion of the case presented on behalf of the petitioner, Latreille, for insufficiency of proof. The statute as to directed verdict (CL 1948, § 618.56 [Stat Ann § 27.1036]), is not, by its wording, made expressly applicable to a proceeding to revoke a license. In *Hanson v. State Board of Registration in Medicine,* 253 Mich 601, 606, we say:

"In revoking plaintiff's license the board's action was an exercise of police power and not, at least in a strict sense, the exercise of judicial power."

Section 19 of the dental act (CL 1948, § 338.219 [Stat Ann 1951 Cum Supp § 14.629 (19)]), among other things, provides:

"The findings of fact made by the board acting within its power shall, in the absence of fraud, be conclusive, but the Supreme Court shall have power to review questions of law involved in any final decision or determination of the board."

Without assuming to pass upon the length and strength of the showing in the petitioner's case, we

think it sufficient to say that there was some showing indicative of plaintiff's guilt.   Defendant board denied the application to dismiss, and permitted plaintiff to proceed with testimony.   There was no error in such denial of plaintiff's motion requiring reversal.

"On certiorari we may not review questions of fact except to determine whether there is competent evidence to support such findings."    *In re Doyle's Application for Reinstatement in Grand Rapids Police Force,* 312 Mich 205, 211.

Plaintiff Applegate also claims that the petition was not signed by a person familiar with the facts as required by section 19 of the dental act.   The familiarity of petitioner, Latreille, with the facts set forth in his petition is shown by the fact that he was a Detroit police officer, had charge, under the prosecuting attorney, of the case against Edelsohn while it was pending in the trial court, had knowledge of the case, had supervision of the men who handled it, talked with Michellod, went over to the court and checked the records.   The testimony on the trial of Edelsohn was more than mere current rumor because sworn to, and above merest hearsay, as a means of familiarizing Latreille with the facts. A copy of the court record of Edelsohn's conviction was attached to Latreille's petition.   Further, Latreille swore positively to his petition.

If the legislature had intended to require that the petition must be sworn to by some person having personal knowledge of all the facts sufficient to be a basis for the charge against a dental practitioner, then it would have been very easy for the legislature to say so in plain and direct words.   But it would be practically impossible for any one person to be able to swear to all the facts of his personal knowledge which in this case amount to a circumstantial

showing of plaintiff's guilt of the charge against him.

The petition complied with the requirements of the statute. The defendant board's finding was based on competent testimony; their deduction and conclusion finding plaintiff guilty as charged in the petition is supported by the testimony. It was for the defendant board and not for this Court to determine the certainty of plaintiff's guilt.

The order appealed from is affirmed. Costs to defendant board.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSHNELL, SHARPE, and BOYLES, JJ., concurred.