Henry Sheldon VANCE, Jr., Appellant

v.

**KENTUCKY OFFICE OF INSURANCE (Formerly Kentucky Department of Insurance), Appellee.**

No. 2006–CA–001341–MR.

Court of Appeals of Kentucky.

Nov. 21, 2007.

As Modified Dec. 14, 2007.

See also, 871 F.2d 572.

Lacey T. Smith, Louisville, Julian M. Carroll, Frankfort, KY, for appellant.

Vicky C. Horn, Kentucky Office of Insurance, Legal Division, Frankfort, KY, for appellee.

Before DIXON and LAMBERT, Judges; ROSENBLUM,[1] Senior Judge.

### OPINION

ROSENBLUM, Senior Judge.

Henry Sheldon Vance, Jr. appeals from an order of the Franklin Circuit Court affirming the Kentucky Department of Insurance's (now Kentucky Office of Insurance) decision to deny him an agent's license. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Vance was first issued a license as an insurance solicitor on March 18, 1976. He was relicensed on June 13, 1978, and November 19, 1987, with two interruptions during that time, including an interruption which ended with the November 1987 relicensing. Vance's license was then renewed every two years without interruption until the solicitor's license category was abolished in the 2000 legislative session.

Shortly prior to the November 1987 renewal, on October 29, 1987, Vance was convicted of conspiring to transport a firearm in interstate commerce with knowledge that it was to be used to commit murder, 18 U.S.C. § 371, and of transporting a firearm in interstate commerce with knowledge that it was to be used to commit murder, 18 U.S.C. § 924(b). The Sixth Circuit affirmed the conviction in an opinion rendered April 4, 1989. *See U.S. v. Vance*, 871 F.2d 572 (6th Cir.1989). The conviction related to the allegation that Vance had provided a handgun which he knew would be used to kill a Florida prosecutor, and after the killing, helping the actual perpetrators of the killing in establishing an alibi. Vance was, and had been, a prominent political figure in Kentucky, having occupied several high ranking appointed positions in state government. Consequently, his federal prosecution received widespread publicity.

At the time of the November 1987 renewal, the rule applied by the Department of Insurance was that a license would be refused only for felony offenses involving "moral turpitude." With full knowledge of the conviction, and believing that Vance's conduct in the Florida killing did not involve moral turpitude, the Department reinstated his solicitor's license.

Subsequent to the November 1987 licensing reinstatement, at two year intervals, Vance continued to apply for and pay the requisite fee for renewal, and the Department continued to approve the renewals. The Department, however, upon the occasion of these routine renewals, did not conduct a reevaluation of Vance's eligibility for licensing under its moral turpitude rule.

The litigation over the solicitor's license having become moot, the matter was, in effect, placed in abeyance and the record kept open to give Vance the opportunity to make application for an agent's license. Vance did so on August 1, 2000, after the July 14, 2000, grandfathering deadline, and was denied his agent's license based upon his 1987 felony conviction. Vance accordingly sought a hearing on the denial of his agent's license through the administrative process.

---

1. Senior Judge Paul W. Rosenblum sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

On July 22, 1999, the Department filed a complaint against Vance seeking to revoke his solicitor's license upon the grounds that he had been convicted in 1987 of a felony involving moral turpitude. Vance challenged the revocation through the Department's administrative process; however, the issue became moot when, effective July 15, 2000, the legislature abolished the solicitor's license. *See* House Bill 875, 2000 Ky. Acts Ch. 393. Former solicitor license holders, however, were given the option of converting their licenses to an agent's license with certain testing requirements being waived if application was made by July 14, 2000. House Bill 875 also changed the statutory standard for denial of a license from a felony involving moral turpitude to any felony.

On July 1, 2001, the hearing officer issued his Findings of Fact, Conclusions of Law, and Recommended Order wherein, among other things, he found issues concerning the solicitor's license to be moot, and recommended the affirming of the Department's denial of Vance's agent's license. Vance filed exceptions to the hearing officer's determinations. On September 24, 2001, the Commissioner issued a final order accepting and adopting the findings and recommendations of the hearing officer.

Vance subsequently filed an appeal with the Franklin Circuit Court. On June 2, 2006, the circuit court entered an Opinion and Order affirming the Department's denial of Vance's agent's license. This appeal followed.

Before us, Vance has abandoned all arguments except (1) that the Department's denial of his agent's license was barred by the statute of limitations; and (2) the Department was estopped from denying him an agent's license.

## STATUTE OF LIMITATIONS

◼ We first note that Vance frames this argument in terms of a "revocation" of his license. He then argues to the effect that because the Department knew of his conviction in 1987 and did not originally seek to revoke his solicitor's license until 1999, the five year limitations period contained in KRS 413.120(3) bars the attempted revocation because the attempted revocation is "an action for a penalty or forfeiture when no time is fixed by the statute prescribing it."

We disagree with the premise of this argument. The Legislature repealed the solicitor's license effective July 15, 2000. While the bill did contain grandfathering provisions, Vance failed to meet the grandfathering application deadline of July 14, 2000. Vance did not file his application for an agent's license until August 1, 2000. As such, we believe the real issue is whether the Department properly denied his license based upon the criteria for review of an original application for an agent's license.

KRS 304.9–440 provides as follows:

The executive director may . . . . revoke, or refuse to issue or renew any license issued under this subtitle . . . for any one (1) or more of the following causes:

. . . .

(f) Having been convicted of or having pled guilty or nolo contendere to any felony;

◼ Judicial review of administrative action by administrative bodies is "concerned with the question of *arbitrariness.*" *American Beauty Homes Corporation v. Louisville and Jefferson County Planning and Zoning Commission*, 379 S.W.2d 450, 456 (Ky.1964) (emphasis in original).

While KRS 304.9–440 provides the Department with discretion in whether to deny a convicted felon an agent's license,

as Vance had been convicted for aiding and abetting a murder—the most serious of crimes—the Department did not act arbitrarily in denying his agent's license.

■ Further, to the extent that the facts at bar could be construed as a revocation (as argued by Vance), we agree with the trial court's application of *Kentucky Bar Association v. Signer*, 558 S.W.2d 582 (Ky.1977). *Signer* held that the statute of limitations period is not a bar to the initiation of disciplinary proceedings against an attorney. We believe the same rule has applicability in the area of the licensing of insurance agents. Insurance agents often conduct business with their clients in the client's home, and among their functions is to give advise crucial to the financial planning and secure future of their clients. Hence, the citizens of the Commonwealth have an overarching interest that the responsible officials in the Office of Insurance maintain the ongoing authority to protect them from insurance agents who, because of past conduct, do not merit the public's trust. As such, under the authority of *Singer*, we hold that the statute of limitations does not bar the Office of Insurance from denying, or revoking, an insurance agent's license under the criteria contained in KRS 304.9–440.

## ESTOPPEL

In this argument Vance contends to the effect that the denial (revocation in Vance's phraseology) of his agent's license is barred by the doctrine of equitable estoppel because the Department renewed his solicitor's license in 1987 without having found him to be disqualified, and then continued to do so on multiple occasions thereafter, thereby continuing to acknowledge that he was not disqualified to hold the license.

■ "The law is long established and deeply rooted in this and other states that, subject to special exceptions, the doctrine of equitable estoppel has no application to governments, municipal corporations and other agencies when their officials are acting in governmental capacities." *Maryland Cas. Co. v. Magoffin County Bd. of Ed.*, 358 S.W.2d 353, 359 (Ky.1961) (citing *Taylor v. City of LaGrange*, 262 Ky. 383, 90 S.W.2d 357 (1936); *City of Paducah v. Gillispie*, 273 Ky. 101, 115 S.W.2d 574 (1938); *Monticello Elec. Light Co. v. City of Monticello, Ky.*, 259 S.W.2d 486 (1953); 19 Am.Jur., Estoppel, §§ 166, 167, 168; 31 C.J.S. Estoppel § 138; and Annotation, 1 A.L.R.2d 338). Estoppel operates against a government agency only in extraordinary circumstances such as where the agency deliberately misleads a party and then acts against the party for relying on the misinformation. *Weiand v. Board of Trustees of Kentucky Retirement Systems*, 25 S.W.3d 88 (Ky.2000); *J. Branham Erecting & Steel Service Company, Inc. v. Kentucky Unemployment Insurance Commission*, 880 S.W.2d 896 (Ky.App.1994).

We need not address this argument on the merits because we are persuaded that the general rule that equitable estoppel does not apply against the Commonwealth is applicable in this situation. We discern no extraordinary circumstances which would bring the Department's denial of Vance's application for an agent's license outside of the general rule.

## CONCLUSION

For the foregoing reasons the judgment of the Franklin Circuit Court is affirmed.

ALL CONCUR.